UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

REJUVENATING FERTILITY CENTER, PLLC,

                                Plaintiff,

                -against-

TD BANK, N.A.,

                                Defendant.

Case No. 1:23-cv-05973 (JLR)

**<u>OPINION AND ORDER</u>**

JENNIFER L. ROCHON, United States District Judge:

On July 12, 2023, Rejuvenating Fertility Center, PLLC ("RFC" or "Plaintiff") filed a Complaint against TD Bank, N.A. ("TD Bank" or "Defendant"), alleging negligence, gross negligence, breach of contract, and violations of the Uniform Commercial Code ("UCC"). Dkt. 1 ("Compl."). RFC dropped its UCC claim, Dkt. 24 at 4 n.2, and the Court dismissed the remaining claims in the Complaint on April 30, 2024, but granted RFC leave to amend, Dkt. 46. On May 21, 2024, RFC filed its Amended Complaint, now asserting claims only for breach of contract and gross negligence. *See generally* Dkt. 51 ("AC"). TD Bank moves pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) to dismiss the Amended Complaint or, in the alternative, to strike portions of the Amended Complaint pursuant to Rule 12(f). Dkt. 54; Dkt. 56 ("Br.") at 1. RFC opposes the motions and moves for leave to file a Second Amended Complaint and to compel TD Bank to produce witnesses for depositions. Dkt. 62 ("Rule 15 Mot.").

For the reasons stated below, the Court GRANTS TD Bank's motion to dismiss, and DENIES RFC's motion for leave to amend. TD Bank's motion to strike and RFC's motion to compel are dismissed as moot.

# BACKGROUND

## I.    Factual Background[1]

RFC is a single-member limited liability company; Dr. Zaher Merhi ("Merhi") is its

sole member.  AC ¶ 1.  RFC maintained an account at TD Bank, a national banking

association.  AC ¶¶ 3, 10.  At some point, RFC entered into a Business Deposit Account

Agreement with TD Bank, *see* Dkt. 55-2 (the "Account Agreement"), which contained the

following Security Procedure provision:

> Funds Transfers will be made according to our approved transmission methods
> and associated security procedure ("Security Procedure").  The Security
> Procedure is intended to verify that an order is authorized, but it is not intended
> to detect errors.  The Security Procedure we will use may include but is not
> limited to: 1) your completion of a form(s) or other documentation of the request;
> 2) positive ID and verification of account information and signature with Bank
> records if the request is made in person; and 3) verification of account
> information and callback to a secure telephone number you have previously
> provided to us if the request is made by phone and we agree, in our sole
> discretion, to process that request.  The Security Procedure will also apply to any
> amendment or cancellation of a Funds Transfer.  You agree that the Security
> Procedure is commercially reasonable and that a Funds Transfer or payment

---

[1] The facts stated herein are largely taken from the AC, as well as documents incorporated by reference in the AC, and are accepted as true for purposes of this motion. *See, e.g.*, *Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 139 (2d Cir. 2018); *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993).  TD Bank asks the Court to consider statements from the Complaint that are omitted in the AC as true because the AC "contradict[s] facts set forth in the original complaint."  Br. at 5 n.3 (citing *Colliton v. Cravath, Swaine & Moore LLP*, No. 08-cv-00400 (NRB), 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008), *aff'd*, 356 F. App'x 545 (2d Cir. 2009) (summary order)); *see* Compl.  While RFC has omitted various facts from its initial Complaint, it is not clear that the omissions have created contradictions, rather than just no longer alleging various aspects of the transactions. *See Mt. Hawley Ins. Co. v. First St. Ocean Grille, LLC*, No. 23-cv-01198 (VEC), 2024 WL 1364704, at *4 (S.D.N.Y. Apr. 1, 2024) (explaining that courts will sometimes disregard amended pleadings "when they contain facts that directly contradict facts alleged in prior pleadings," but will not look to original complaints when the amended complaint contains "additions, changes[,] and omissions that constitute the kinds of modifications often made by plaintiffs in response to a motion to dismiss" (citation omitted)).  In any event, the Court need not decide whether to consider the omitted items from RFC's initial Complaint, as requested by TD Bank, because the motion can be resolved even if the earlier allegations are not considered.

> order, verified by the Security Procedure, is effective as your order, whether or not the order is in fact authorized by you.

AC ¶ 28 (emphases omitted); *see* Account Agreement at 26-27.  The Account Agreement also contains the following provision limiting TD Bank's liability:

> Unless expressly prohibited or otherwise restricted by applicable law, this agreement, or the electronic funds transfer disclosure, the bank's liability is limited as follows: the bank will not be liable to you for performing or failing to perform our services under or in connection with this agreement *unless we have acted with gross negligence, willful misconduct or bad faith*.

Account Agreement at 18 (the "Exculpatory Clause") (emphasis added) (further capitalization omitted).

On or about November 1, 2022, RFC received an email requesting that it wire a $204,000 settlement payment to a recipient with a TD Bank account.  AC ¶¶ 7-8.  RFC sent the wire the same day.  AC ¶ 9.  Over a week later, on November 9, 2022, RFC noticed a fraudulent check withdrawal for the same amount — $204,000 — from another TD Bank account maintained by RFC.  AC ¶ 10.  Merhi went to a TD Bank branch in Westport, CT, and told the Bank Manager that the wire transfer and the check were fraudulent.  AC ¶ 11. The Bank Manager reassured Merhi that the original wire transfer would be immediately reported and that TD Bank would recover the funds, since the funds were still within the United States.  AC ¶ 14.  The Bank Manager did not immediately advise TD Bank's Fraud Department about the two incidents, AC ¶ 14, nor did he promptly issue a recall of the fraudulent wire transfer, AC ¶ 15.  TD Bank allegedly waited two weeks to attempt to recall the funds.  AC ¶ 19.  RFC alleges that this delay occurred despite the fact that TD Bank was aware of this fraud and "other fraud on the account," AC ¶ 19, but does not identify any "other fraud" in the Amended Complaint.  RFC "immediately" filed a complaint with the Internet Crime Complaint Center ("IC3").  AC ¶ 20.  At some point, a TD Bank banker

advised RFC that "this happens often," AC ¶ 21, but RFC does not clarify in the AC what activity "this" refers to.  TD Bank also allegedly refused to work with the FBI, and commonly fails to do so.  AC ¶ 22.

## II.    Procedural History

On July 12, 2023, RFC filed the instant suit against TD Bank, alleging claims for negligence, a violation of the New York UCC, gross negligence, and breach of contract. Compl. ¶¶ 50-66.  On October 2, 2023, TD Bank moved to dismiss the Complaint under Rule 12(b)(6).  Dkt. 11.  RFC withdrew its UCC claim.  Dkt. 24 at 4 n.2.  On April 18, 2024, TD Bank moved for a stay of discovery.  Dkt. 43.  On April 30, 2024, the Court granted the motion to dismiss the remaining claims and permitted RFC to file an Amended Complaint within twenty-one days of its Order; it also granted the motion to stay discovery.  Dkt. 46.  On May 21, 2024, RFC filed its Amended Complaint, principally omitting its negligence claim, as well as numerous facts about the wire-transfer fraud and TD Bank's response.  *Compare generally* AC, *with* Compl.  On June 11, 2024, TD Bank moved to dismiss the AC or, in the alternative, to strike certain allegations.  Dkt. 54.  The parties completed briefing by July 31, 2024.  *See* Dkt. 59 ("Opp."); Dkt. 60 ("Reply").  On October 14, 2024, RFC moved for leave to file a Second Amended Complaint and to compel TD Bank to produce witnesses for depositions.  Rule 15 Mot.  TD Bank opposed the motion, *see* Dkt. 63 ("Rule 15 Opp."), and filed a further opposition brief on October 18, 2024, *see* Dkt. 64 ("Rule 15 Surresponse"). Both motions are fully briefed.  The Court will consider TD Bank's motion to dismiss before considering RFC's motions.

## MOTION TO DISMISS

### I.   Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).  On a Rule 12(b)(6) motion, the court must "accept all factual allegations as true and draw all reasonable inferences in the [opposing party]'s favor." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110-11 (2d Cir. 2010) (alterations adopted) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)). The court shall not "accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

### II.   Breach of Contract (Count I)

RFC alleges that TD Bank breached the Account Agreement by failing to follow the Security Procedure provision in the Account Agreement. AC ¶¶ 27-28.  TD Bank moves to dismiss RFC's breach-of-contract claim, arguing that the AC does not allege facts that support that claim.  Br. at 8-10.

"The parties' briefs assume that New York law controls, and such implied consent is sufficient to establish choice of law." *Alphonse Hotel Corp. v. Tran*, 828 F.3d 146, 152 (2d Cir. 2016) (ellipsis, quotation marks, and citation omitted).  Under New York law, a breach-of-contract claim has four elements: a contract exists, the plaintiff performed in accordance with the contract, the defendant breached its contractual obligations, and the defendant's breach resulted in damages. *34-06 73, LLC v. Seneca Ins. Co.*, 198 N.E.3d 1282, 1287 (N.Y. 2022).  "A sufficient pleading for breach of contract must, at a minimum, allege the terms of the contract, each element of the alleged breach[,] and the resultant damages in a plain and

5

simple fashion." *Abadi v. Am. Airlines, Inc.*, No. 23-cv-04033 (LJL), 2024 WL 1346437, at *45 (S.D.N.Y. Mar. 29, 2024) (quotation marks and citation omitted).

The Court agrees with TD Bank that RFC has not stated a claim for breach of the Account Agreement by failing to follow the Security Procedure provision. The Security Procedure provision sets forth three possible procedures that TD Bank "may" use to verify the authorization of funds transfers: (1) "completion of a form(s) or other documentation of the request"; (2) "positive ID and verification of account information and signature with Bank records if the request is made in person"; and (3) "verification of account information and callback to a secure telephone number," in the event that a transfer request is made by phone. AC ¶ 28. This procedure applies to "amendment or cancellation of a Funds Transfer." *Id.* RFC does not, however, allege that TD Bank failed to use any of the aforementioned verification procedures with respect to the transactions at issue here.[2]

Instead, RFC alleges that TD Bank's Bank Manager failed to immediately advise TD Bank's Fraud Department about the two fraudulent transfers and promptly issue a recall. *See* AC ¶¶ 12-15, 17. But RFC has not pointed to anything in the Security Procedure provision that imposes these obligations on TD Bank or its Bank Managers, *see* AC ¶ 28, and RFC does not identify any other provision of the Account Agreement that imposes these obligations. As a result, these allegations do not support a breach-of-contract claim. *See Sorof Trading Dev. Co. v. GE Fuel Cell Sys., LLC*, 842 F. Supp. 2d 502, 511-12 (S.D.N.Y. 2012) (dismissing

---

[2] In fact, the original Complaint contained allegations indicating that TD Bank *followed* the Security Procedure provision by, for example, requiring Merhi to provide his cell phone number as a form of identification when he made an in-person wire transfer on November 1, 2022, but RFC has now deleted those allegations in its AC. Compl. ¶ 33 ("Merhi . . . went to his TD Bank branch and provided the banker with his cell phone and wrote down the account number with the name of the recipient.").

breach-of-contract claim where contract did not impose the obligation that plaintiff claimed had been breached).

Nor is RFC's summary allegation that TD Bank breached the Account Agreement by "failing to apply the Security Procedure" sufficient. AC ¶ 29. "Conclusory allegations that a defendant breached an agreement are insufficient to support a breach of contract claim." *Hadami, S.A. v. Xerox Corp.*, 272 F. Supp. 3d 587, 597-98 (S.D.N.Y. 2017) (citation omitted) (rejecting breach-of-contract claim where plaintiff did "no more than list terms in the [contract] and conclusorily allege that [defendant] violated them"); *Frontline Processing Corp. v. Merrick Bank Corp.*, No. 13-cv-03956 (RPP), 2014 WL 837050, at *3 (S.D.N.Y. Mar. 3, 2014) (dismissing breach-of-contract claim where allegations "amount[ed] to inserting the word 'failed' in front of contract provisions" and did not "specify how the [d]efendant allegedly failed to perform on its contractual obligations").[3]

---

[3] RFC's reliance on *Jakob v. JPMorgan Chase Bank, N.A.*, 639 F. Supp. 3d 406 (E.D.N.Y. 2022), and *Ohr Somayach/Joseph Tananbaum Educational Center v. Farleigh International Ltd.*, 483 F. Supp. 3d 195 (S.D.N.Y. 2020), is unavailing. Opp. at 5-6. In *Jakob*, the court found that plaintiff satisfactorily alleged breach of contract where the plaintiff claimed that the defendant breached the wire-transfer agreement that permitted plaintiff to cancel wire transfers by rejecting the plaintiff's request to cancel a wire transfer. 639 F. Supp. 3d at 414. In *Jakob*, unlike in the present case, the plaintiff alleged both the specific contractual provision that was allegedly breached and how the defendant had breached it. Similarly, in *Ohr Somayach*, the defendant — asserting a breach-of-contract counterclaim — alleged that the plaintiff breached provisions of an oral contract that purportedly required the plaintiff to use a gift to construct an educational facility for specific, designated non-profit religious educational purposes, and also provided that the facility would not be mortgaged or encumbered. 483 F. Supp. 3d at 210. The court found that the counterclaimant had adequately alleged breach of contract where it alleged that plaintiff had not used the center for religious educational purposes, but had instead left the center vacant or rented it out commercially; the counterclaim also alleged that the plaintiff had taken out a mortgage on the property on three specific occasions. *See id.* at 210-11. Here, in contrast, RFC alleges that TD Bank failed to follow the Security Procedure in the Account Agreement, AC ¶ 28, but does not allege facts that support an alleged violation of that provision.

Although RFC bases its breach-of-contract claim on a "breach of the Account Agreement," AC ¶ 27, RFC elsewhere refers to TD Bank's obligations under unspecified "policies and procedures," AC ¶ 13.  This is not sufficient to plead a contract that has been breached.  To plead a claim for breach of contract, "a plaintiff must identify what provisions of the contract were breached as a result of the acts at issue." *Piuggi v. Good for You Prods. LLC*, 739 F. Supp. 3d 143, 168 (quoting *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 189 (S.D.N.Y. 2011)).  Here, the AC alleges that TD Bank's "policies and procedures" required the Bank Manager to alert the Fraud Department about the transfers and issue a recall.  AC ¶¶ 13, 15, 17.  However, RFC does not identify any provisions of a contract between it and TD Bank that impose such an obligation upon TD Bank.  Because RFC does not identify a breach of a specific contractual obligation, it has "failed to allege the first element of a contract claim: an enforceable agreement to do what Plaintiff alleges Defendant has failed to do." *Ancile Inv. Co. Ltd. v. Archer Daniels Midland Co.*, 784 F. Supp. 2d 296, 304-05 (S.D.N.Y. 2011).

RFC claims that TD Bank has refused to "provide the applicable security procedures" and has refused to comply with discovery demands, suggesting that the proper course would be to permit discovery before evaluating the merits of RFC's breach-of-contract claim based on unspecified security procedures.  *See* Opp. at 5.  The Court does not agree.  Rule 8 and the pleading standards articulated in *Twombly* "mark[ed] a notable and generous departure from the hypertechnical, code-pleading regime of a prior era," but Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.  Rather, the pleading standard "acts as a 'screening mechanism' in the early stages of the litigation" and requires the complaint — not a plaintiff's speculation as to what discovery might uncover — "to allege sufficient facts to 'raise a reasonable expectation that

discovery will reveal evidence' of the defendant's wrongdoing." *Lugo v. City of Troy*, 114 F.4th 80, 89 (2d Cir. 2024) (first quoting *Ríos-Campbell v. U.S. Dep't of Com.*, 927 F.3d 21, 24 (1st Cir. 2019); and then quoting *Twombly*, 550 U.S. at 545). RFC has not done so here.[4]

For all of these reasons, the Court dismisses Count I of the AC for failure to state a claim.

### III. Gross Negligence (Count II)

In Count II, RFC alleges that TD Bank was grossly negligent because (1) TD Bank's Bank Manger promised to issue a recall of the wire transfer and intentionally failed to do so; (2) TD Bank's employees disregarded and failed to follow TD Bank's policies and procedures, including the Security Procedure; and (3) TD Bank refused and failed to cooperate with law enforcement. AC ¶¶ 31-36.

To state a claim for gross negligence under New York law, plaintiffs "must establish four elements: (1) the existence of a duty; (2) a breach of that duty; (3) 'injury as a result thereof'; and (4) conduct that 'evinces a reckless disregard for the rights of others or "smacks" of intentional wrongdoing.'" *Purchase Partners, LLC v. Fed. Sav. Bank*, 914 F. Supp. 2d 480, 497 (S.D.N.Y. 2012) (quoting *Farash v. Cont'l Airlines, Inc.*, 574 F. Supp. 2d 356, 367-68 (S.D.N.Y. 2008), *aff'd*, 337 F. App'x 7 (2d Cir. 2009) (summary order)), *vacated in part on other grounds on reconsideration sub nom. Purchase Partners, LLC v. Carver Fed. Sav. Bank*, No. 09-cv-09687 (JMF), 2013 WL 1499417 (S.D.N.Y. Apr. 10, 2013). "Stated

---

[4] RFC's reliance on *Sotheby's, Inc. v. Stone*, 388 F. Supp. 3d 265 (S.D.N.Y. 2019), is misplaced. In *Sotheby's*, the particular contracts and contract provisions were identified, as well as the contents of an oral agreement. *Id*. at 274. The court held only that it was premature to dismiss the breach-of-contract counterclaim because there was an issue of fact as to which contract was operative. *Id*. Unlike in *Sotheby's*, RFC has not identified the particular policy or procedure that was breached here.

differently, a party is grossly negligent when it fails to exercise even slight care or slight diligence." *Seti v. Carnell Assocs., Inc.*, 193 N.Y.S.3d 80, 81 (App. Div. 2023) (ellipsis and citation omitted).

TD Bank first argues that RFC's gross negligence claim should be dismissed because the AC does not allege a duty separate and distinct from TD Bank's duties arising under the Account Agreement.  Br. at 10.  The Court agrees.  No other duty has been identified by RFC, other than the contractual duty of the Account Agreement between TD Bank and its customer, RFC.  Indeed, RFC alleges that TD Bank was grossly negligent by failing to follow TD Bank's contractual Security Procedure.  AC ¶ 33.  It is a well-established principle of New York law that "a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated."  *Dormitory Auth. v. Samson Constr. Co.*, 94 N.E.3d 456, 460 (N.Y. 2018) (quoting *Clark-Fitzpatrick, Inc. v. Long Island R.R.*, 516 N.E.2d 190, 193 (N.Y. 1987)).  "[A] party cannot sustain a [gross negligence] claim if it 'does no more than assert violations of a duty which is identical to and indivisible from the contract obligations which have been allegedly breached.'"  *Purchase Partners*, 914 F. Supp. 2d at 497 (quoting *Clarendon Nat'l Ins. Co. v. Health Plan Adm'rs*, No. 08-cv-06279 (GBD), 2009 WL 3053736, at *3 (S.D.N.Y. Sept. 24, 2009)).  In *Dormitory Authority*, for example, the New York Court of Appeals considered a claim for negligence arising out of a construction project to build a forensic-biology laboratory, in which the parties entered into a contract for the provision of certain services.  94 N.E.3d at 458.  The court found that the negligence claim was duplicative of the breach-of-contract claim, reasoning that the allegations were "merely a restatement, albeit in slightly different language, of the . . . contractual obligations asserted in the cause of action for breach of contract."  *Id.* at 461 (quoting *Clark-Fitzpatrick*, 516 N.E.2d at 194).  Here too, RFC does not identify any duty independent of the contractual account

relationship that TD Bank allegedly breached with its customer, RFC.  These allegations are therefore insufficient to state a claim for gross negligence.  *See Purchase Partners*, 914 F. Supp. 2d at 497 (dismissing gross negligence claim where plaintiffs had "not established, or even really alleged, a duty that [defendant] had independent from its duty arising from the . . . Agreement").

RFC's contention that the economic loss doctrine does not bar its gross negligence claim because the economic loss doctrine is limited to products-liability claims is unavailing. *See* Opp. at 7-8.  The economic loss doctrine is often applied outside the products-liability context.  *See, e.g.*, *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 439 F. Supp. 3d 275, 283-84 (S.D.N.Y. 2020) (dismissing negligence and gross negligence claims where alleged duty was based on defendant's alleged failure to perform its contractual duties); *cf. Bayerische Landesbank, N.Y. Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 58 (2d Cir. 2012) (plaintiff stated a claim for gross negligence where it alleged a legal duty independent of contractual obligations incident to the parties' relationship); *Phoenix Light SF Ltd. v. Deutsche Bank Nat'l Tr. Co.*, 172 F. Supp. 3d 700, 718-19 (S.D.N.Y. 2016) (similar).  Even if there are questions about "whether a defendant's alleged breach of extra-contractual legal duties is independently sufficient to foreclose application of the economic loss rule, or whether a plaintiff must *also* allege damages flowing from the tort claims that are independent of the damages flowing from the contract claims," *Ambac*, 328 F. Supp. 3d at 158; Reply at 6, the Court need not resolve this question here.  Not only has RFC failed to allege an extracontractual duty but it also has not identified any damages that it suffered that are independent from its contractual damages.  *See* AC ¶¶ 30, 36; *see, e.g.*, *Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n*, No. 14-cv-10116 (KBF), 2016 WL 1169515, at *10 (S.D.N.Y. Mar. 22, 2016) (dismissing gross negligence claim where "any damages arising out of the

negligence sound[ed] in contract damages," and the economic loss doctrine therefore "also bar[red] recovery").

As an alternative basis for dismissal, Count II also fails to state a claim because RFC has failed to allege intentional or reckless conduct necessary to rise to the level of gross negligence. "On a motion to dismiss, a claim for gross negligence will be sustained only if the plaintiff alleges facts plausibly suggesting that the defendant's conduct evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing." *Bayerische Landesbank*, 692 F.3d at 61 (internal quotation marks omitted) (citation omitted). In the context of a gross negligence claim, recklessness means "an extreme departure from the standards of ordinary care," such that "the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *AMW Materials Testing, Inc. v. Town of Babylon*, 584 F.3d 436, 454 (2d Cir. 2009) (internal quotation marks omitted). RFC alleges that TD Bank's employees intentionally "failed to follow recall policies and procedures and [the] Security Procedure of TD Bank," that TD Bank's Bank Manager intentionally failed to recall the fraudulent wire transfer by waiting two weeks, and that TD Bank intentionally refused to cooperate with law enforcement, including the FBI. AC ¶¶ 17-19, 22-24, 32.

RFC has not alleged facts that demonstrate an extreme departure from the ordinary standard of care. Instead, RFC merely tacks the word "intentional" onto its descriptions of TD Bank's alleged conduct, or conclusorily asserts that certain conduct shows reckless disregard. *See, e.g.*, AC ¶ 32 ("TD Bank's Manager promised to issue a recall, but intentionally failed to do so."); *id.* ¶ 34 ("TD Bank refused and failed to cooperate with law enforcement regarding the wire, which refusal smacks [o]f intentional wrongdoing and not merely carelessness."). More specifically, an allegation that TD Bank "intentionally" failed to follow the Security Procedure does not rise to gross negligence, especially since RFC has not

even alleged facts supporting that TD Bank failed to follow the procedure. *See supra* pp. 5-9.

RFC has not cited to any facts or law that support its claim that TD Bank's failure to timely

recall the wire transfer is "an extreme departure from the standards of ordinary care" where

RFC did not seek a recall until more than a week had passed after the wire transfer had

already been accepted and effected. AC ¶¶ 7-11; *see Fischer & Mandell LLP v. Citibank,*

*N.A.*, 632 F.3d 793, 801-02 (2d Cir. 2011) (dismissing negligence claim where plaintiff did

not seek to cancel or recall wire transfer order until after the defendant bank had already

accepted the wire transfer, and defendant bank did not agree to cancel or recall the wire

transfer). Finally, RFC provides no factual allegations about any law enforcement requests

that TD Bank allegedly refused to cooperate with, nor does it cite any authority suggesting

that TD Bank had a duty to cooperate with the FBI. *Cf. Pederson v. MidFirst Bank*, 527 F.

Supp. 3d 188, 195 (N.D.N.Y. 2021) (dismissing breach of fiduciary duty claim where

plaintiffs did not cite any authority indicating that defendant bank had a duty to cooperate

with the FBI or could be liable in tort for failing to do so). In sum, "[s]imply adding the

conclusory word 'reckless'" or intentional to TD Bank's alleged conduct does not "transform

[it] into something approaching *intentional* misconduct" sufficient to plead a gross negligence

claim. *Bayerische Landesbank*, 692 F.3d at 62. And while plaintiffs are not required to plead

gross negligence with particularity, they still must "alleg[e] 'factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct

alleged.'" *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 437 (S.D.N.Y. 2010)

(quoting *Iqbal*, 556 U.S. at 663). RFC has failed to do so here.

Because RFC has not pleaded the existence of a duty separate from the Account

Agreement or extracontractual damages, nor facts that plausibly suggest reckless or

intentional wrongdoing, the Court will dismiss Count II.

## MOTION FOR LEAVE TO AMEND

The Court will next discuss RFC's letter motion for leave to amend.  RFC seeks leave to amend to add a claim under New York General Business Law ("GBL") Section 349, N.Y. Gen. Bus. Law § 349, for deceptive business practices; and to reinstate its negligence claim, which the Court previously dismissed, *see* Dkt. 49 ("Bench Op.") at. 9:25-12:2; Rule 15 Mot. at 1.  For the reasons that follow, the Court denies RFC's motion to amend because the proposed amendments are futile.

Rule 15 provides that courts "should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a); *see Pandya v. SEC*, No. 23-cv-11180 (JLR), 2025 WL 71847, at *7 (S.D.N.Y. Jan. 10, 2025) (same) (citing *Farrell v. City of New York*, No. 23-cv-04329 (JLR), 2024 WL 3849333, at *7 (S.D.N.Y. Aug. 16, 2024)).  "Nonetheless, 'it is within the sound discretion of the district court to grant or deny leave to amend,' and 'a district court may properly deny leave when amendment would be futile.'"  *Veras v. N.Y.C. Dep't of Educ.*, No. 22-cv-00056 (JLR) (SN), 2024 WL 3446498, at *8 (S.D.N.Y. July 17, 2024) (first quoting *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018); and then *Jones v. N.Y. State Div. of Mil. & Naval Affs.*, 166 F.3d 45, 50 (2d Cir. 1999)), *aff'd*, No. 24-1956, 2007 WL 10131754 (2d Cir. Feb. 6, 2025) (summary order).  "[T]he standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss."  *Carroll v. Trump*, 590 F. Supp. 3d 575, 579 (S.D.N.Y. 2022) (quoting *IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015)); *see also IBEW Loc. Union*, 783 F.3d at 389 (a proposed amendment is futile if it "would fail . . . to state a claim under Rule 12(b)(6)" (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012))).

RFC's motion to amend to add a GBL Section 349 claim relies on a plea agreement and consent order between TD Bank and the Department of Justice following an investigation into, among other things, TD Bank's failure to maintain an adequate anti-money-laundering program and violations of the Bank Secrecy Act of 1970, 13 U.S.C. § 5311 *et seq.* Rule 15 Mot.; *see* Dkt. 62-1 ("Plea Agreement") ¶ 2; *see generally* Dkt. 62-2 ("Statement of Facts"). GBL Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]." N.Y. Gen. Bus. Law § 349. To state a claim under GBL Section 349, a plaintiff must allege that "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020) (quoting *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000) (per curiam)). "[T]o avoid dismissal, plaintiffs must adequately plead each of these elements." *Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.*, 171 N.E.3d 1192, 1197 (N.Y. 2021).

In its request to amend, RFC has not identified how it will allege that it "suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015). RFC has not identified facts supporting an inference that its losses resulting from the fraudulent wire and check transactions were the product of the money-laundering conduct detailed in the Plea Agreement or Statement of Facts, let alone any consumer-oriented material misstatements or deception. As a result, an amendment to add a GBL Section 349 claim would be futile.

It would also be futile for RFC to amend its AC to reassert a negligence claim because it is barred by the Account Agreement's Exculpatory Clause and because violations of the Bank Secrecy Act do not give rise to a private right of action. As discussed by the Court in its

previous opinion, the Exculpatory Clause in the Account Agreement bars RFC's common law negligence claim. *See* Bench Op. at 10:5-19. The Account Agreement states that TD Bank "will not be liable to [RFC] for performing or failing to perform our services under or in connection with this agreement unless we have acted with gross negligence, willful misconduct[,] or bad faith." Account Agreement at 18 (capitalization omitted). Even if there were no bar to bringing such a claim, TD Bank's failure to comply with the requirements of the Bank Secrecy Act does not, without more, give rise to a negligence (or even gross negligence) claim. Courts in this Circuit have held that the "anti-money-laundering obligations of banks, as established by the Bank Secrecy Act, . . . do not create a private cause of action permitting third parties to sue for violations of the statute." *Frankel-Ross v. Congregation OHR Hatalmud*, No. 15-cv-06566 (NRB), 2016 WL 4939074, at *4 (S.D.N.Y. Sept. 12, 2016) (quoting *El Camino Rest., LTD v. Huntington Nat'l Bank*, 722 F. Supp. 2d 875, 923 (W.D. Mich. 2010), *aff'd*, 712 F.3d 917 (6th Cir. 2013)). Because the Bank Secrecy Act does not create a private cause of action, it also does not give rise to "a duty of care that is predicated on the statute's monitoring requirements." *Id.* (quoting *In re Agape Litig.*, 681 F. Supp. 2d 352, 360 (E.D.N.Y. 2010)). Indeed, "courts have repeatedly held that a bank's duty [under the Bank Secrecy Act] is owed *only* to the government and not to private parties." *Marchak v. JPMorgan Chase & Co.*, No. 15-cv-04297 (ILG) (MDG), 2016 WL 3911926, at *3 (E.D.N.Y. July 15, 2016) (citation omitted). Thus, any negligence claim by RFC based on TD Bank's violations of the Bank Secrecy Act would be futile.

Finally, RFC states in a footnote in its opposition brief that if TD Bank's motion to dismiss is granted, it should be afforded leave to replead. Opp. at 4 n. 1. RFC had an opportunity to amend after the Court detailed the deficiencies in its pleadings, *see generally* Bench Op., and failed to cure those deficiencies in the Amended Complaint. *See Murphy*

*Med. Assocs., LLC v. 1199SEIU Nat'l Benefit Fund*, No. 23-cv-06237 (DEH), 2024 WL 2978306, at *6 (S.D.N.Y. June 12, 2024) (denying further leave to amend where plaintiffs already had opportunity to amend complaint with benefit of court's decision, and failed to remedy deficiencies in amended complaint).  In addition, RFC has offered no information about what amendments or additions it would assert in its Second Amended Complaint, let alone ones that would cure the deficiencies in the Amended Complaint.  *See Gregory v. ProNAi Therapeutics Inc.*, 757 F. App'x 35, 39 (2d Cir. 2018) (summary order) (affirming denial of leave to amend where "plaintiffs sought leave to amend in a footnote at the end of their opposition to defendants' motion to dismiss" and "included no proposed amendments").  Therefore, leave to amend is denied.

## CONCLUSION

For the foregoing reasons, TD Bank's motion to dismiss pursuant to Rule 12(b)(6) is GRANTED.  RFC's motion for leave to amend is DENIED.  The Amended Complaint is DISMISSED with prejudice.  RFC's motion to compel and TD Bank's motion to strike are DENIED as moot.  The Clerk of Court is respectfully directed to terminate the motions at Dkts. 54 and 62 and close the case.

Dated: February 24, 2025
      New York, New York

SO ORDERED.

JENNIFER L. ROCHON
United States District Judge